IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

WILLIE MOSBY,

                                                    OPINION AND ORDER

               Plaintiff,

                                                    08-cv-677-bbc

     v.

JULIE CAVEY, SUSANNA RUSHFORD,
SUSAN BURKEHEIMER, CURT
SILBERSCHMIDT and JAMES WOMMACK,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

     Plaintiff Willie Mosby is proceeding on his claim that defendants were deliberately indifferent to his serious dental needs in late 2006 and early 2007. Jurisdiction is present. 28 U.S.C. § 1331. Defendants have filed a motion for summary judgment. Dkt. #42. I conclude that there are genuine issues of material fact that preclude granting defendants' motion for summary judgment.

     Before getting into the facts, three additional matters require attention. First, defendants have filed a motion to stay pretrial proceedings, dkt. #80. They contend that a decision on their summary judgment motion will resolve all claims, making further trial preparation unnecessary. However, as this opinion explains, their summary judgment

1

motion will be denied; a trial is necessary to resolve plaintiff's claims.   Accordingly, defendants' motion to stay pretrial proceedings will be denied.

Second, plaintiff contends that all findings of fact regarding his March 25, 2006 through August 14, 2006 incarceration at the Dane County jail are immaterial and irrelevant to this case.   Plt.'s Resp. to Defs.' PFOF, dkt. #70, at 2.   I disagree.   Plaintiff's dental health during his previous incarceration is relevant and material to defendants' knowledge of plaintiff's dental health needs as well as to the seriousness of his dental health needs. Accordingly, I will consider findings of fact concerning plaintiff's wisdom tooth that are based on evidence from dental records created prior to his October 15, 2006 incarceration.

Third, defendants failed to respond to plaintiff's proposed findings of fact.   Dkt. #69. The consequence of such a failure was explained in an attachment to the preliminary pretrial conference order: "A fact properly proposed by one side will be accepted by the court as undisputed unless the other side properly responds to the proposed fact and establishes that it is in dispute."   Dkt. #34, at 14 ¶3.   This is reiterated in the memorandum to pro se litigants, which notes that "[i]f a party fails to respond to a fact proposed by the opposing party, the court will accept the opposing party's proposed fact as undisputed."   Id. at 16. Accordingly, I will accept plaintiff's proposed findings of fact as undisputed.

From the parties' proposed facts, I find that the following facts are material and undisputed.

2

UNDISPUTED FACTS

A.  Parties

At all times relevant to this case, plaintiff Willie Mosby was a pre-trial detainee confined at the Dane County jail awaiting a parole hearing and trial on criminal charges; defendants Susan Burkheheimer, Suzanna Rushford and Julie Cavey were employed as nurses at the jail; and defendants James Wommack and Curt Silberschmidt were employed as dentists at the jail.

B.  Plaintiff's Initial Tooth Problems

On March 26, 2006, plaintiff was transferred from the Dodge Correctional Facility to the Dane County jail.  At intake, plaintiff complained of pain from a lower erupted wisdom tooth.  He was prescribed 600 mgs of ibuprofen, three times a day.

On June 28, 2006, defendant Wommack examined plaintiff's teeth and noted that he had an erupted lower left wisdom tooth, that is, the no. 17 tooth.  There was no swelling or exudate to indicate that the tooth was infected.  Wommack advised plaintiff to see an oral surgeon about the tooth after his release from jail.  Wommack prescribed 800 mgs of ibuprofen for seven days for any pain and Amoxicillian as a prophylactic antibiotic to prevent the development of pericoronitis (an infection of the gum around the wisdom tooth).  Pericoronitis is a possible complication occurring with an impacted wisdom tooth

3

and is often the result of improper dental hygiene.

Having an impacted wisdom tooth does not mean that the patient is suffering from a dental emergency requiring immediate removal of a wisdom tooth.  Wommack has seen patients who have impacted wisdom teeth that do not require removal for many years.  An impacted wisdom tooth becomes an emergent condition when the tooth itself becomes infected, when the tooth causes damage to the surrounding tissues or when the tooth pain becomes significant.  In June 2006, plaintiff's impacted wisdom tooth did not represent an emergent condition.

On July 10, 2006, plaintiff filed a medical request about his wisdom tooth, asking about oral surgery.  Plaintiff was placed on the list to see a dentist.  He was also told that the jail did not pay for oral surgeons and asked whether he could pay for the costs of oral surgery.  Plaintiff saw defendant Wommack the next day and insisted on seeing an oral surgeon for his impacted wisdom tooth.  Wommack explained that inmates were not usually referred to oral surgeons, except in emergency circumstances.  Wommack again examined plaintiff's impacted wisdom tooth and determined that there were no symptoms that required immediate treatment.  Wommack recommended that plaintiff see an oral surgeon when he was released from jail.

On August 1, 2006, defendant Silberschmidt examined plaintiff at the jail.  Plaintiff complained that his wisdom tooth was sore.  Silberschmidt prescribed 750 mgs of

4

Amoxicillin, twice daily for ten days.  Plaintiff asked to see an oral surgeon but Silberschmidt believed that the tooth did not require surgery.  On August 14, 2006, plaintiff was released from the jail.

## B.  Plaintiff's Return to the Dane County Jail

On October 15, 2006, plaintiff was imprisoned at the Dane County jail.  He did not identify any dental problems during medical triage.  His only complaint was a headache for which he was given ibuprofen.  Between August 14, 2006 and October 15, 2006, plaintiff had not obtained any treatment for his impacted wisdom tooth because there was no indication that he needed either routine or emergency dental care.

On November 3, 2006, plaintiff submitted a medical slip complaining of a toothache for over a week and migraine headaches for a couple of days.  On November 6, a nurse examined plaintiff and noted that his no. 17 tooth appeared fractured.  Defendant Rushford placed plaintiff on the sick-call list and prescribed 400 mgs of ibuprofen, two times a day for five days.  On November 7, defendant Silberschmidt examined plaintiff's impacted wisdom tooth, noting that there was swelling around the tooth and that plaintiff had developed pericoronitis.  Plaintiff asked Silberschmidt to pull the tooth, but he said that it was beyond his practice and that such an extraction would require an oral surgeon.  Plaintiff then asked to be referred to an oral surgeon, but Silberschmidt said that he was not permitted to make

5

such a referral.  Silberschmidt prescribed pain medication and antibiotics for ten days to clear up the infection, and he scheduled a return visit for the following week.

On November 15, 2006, defendant Wommack examined plaintiff's tooth and found that the pain and infection had improved.  Plaintiff asked Wommack to extract his wisdom tooth, but Wommack declined, explaining that plaintiff would need to see an oral surgeon upon release to have tooth pulled.  Plaintiff explained that he would not be released for a long time and Wommack responded that for the time being he could only prescribe 800 mgs of ibuprofen, twice daily for ten days.  Wommack reiterated that upon release plaintiff needed to see an oral surgeon to have the tooth extracted.

On January 2, 2007, plaintiff submitted a medical slip, complaining of severe dental pain.  Defendant Cavey examined plaintiff and referred him to the jail dentist on an urgent basis.  Cavey also prescribed 400 mgs of ibuprofen, twice a day for three days.  On January 5, defendant Wommack examined plaintiff's wisdom tooth and noted that plaintiff continued to suffer from pericoronitis around the tooth.  He noted pus and swelling and that the tooth was starting to push up against another tooth.  Wommack told plaintiff that the tooth needed to be pulled, but that he could not pull the tooth because only an oral surgeon could pull it.  (The parties dispute whether Wommack told plaintiff that the tooth needed to be pulled "immediately.")  Plaintiff asked Wommack to refer him to an oral surgeon, but Wommak explained that "they" would not let him make such a referral.  Wommack

6

prescribed 500 mgs of the antibiotic Cipro twice a day for ten days to clear up the infection and 800 mgs of ibuprofen twice a day for pain.  Wommack suggested that plaintiff chew foods on the right side of his mouth and told him that he should submit a medical slip if the tooth started to cause him pain again and Wommack would see him right away.

On January 21, 2007, plaintiff submitted a medical slip, stating that his wisdom tooth was starting to cause him pain again.  The next day, defendant Cavey examined plaintiff and prescribed 400 mgs of ibuprofen twice daily for three days.  Plaintiff told Cavey that defendant Wommack had said he would see plaintiff right away if his tooth started to ache again.  (The parties dispute what happened next.  Plaintiff alleges that defendant Cavey refused to sign him up to see the jail dentist.  Defendants allege that plaintiff refused to be seen by the jail dentist.)  On January 24, Cavey examined plaintiff because of his complaints of a migraine headache.  She provided him 400 mgs of ibuprofen twice a day for three days.  On January 28, Cavey examined plaintiff because of his complaints of a migraine headache as well as a toothache.  She provided plaintiff 400 mgs of ibuprofen twice a day for five days.  On January 29, defendants Cavey and Rushford placed plaintiff on "nurse call" because he requested a weight check.  Plaintiff submitted another medical slip on February 3.  (The parties dispute what happened with plaintiff's February 3 medical slip.  Plaintiff alleges that he requested a higher dosage of pain medication for his toothache and that Rushford ignored the request.  Defendants allege that Rushford responded to the request on February 4,

explained to plaintiff that his dental needs could not be treated at the jail, placed him on the dentist call list and told him to return if his condition worsened.)

On February 5, 2007, plaintiff submitted a medical slip requesting a physical examination and pain medication for his headache and toothache. On February 6, defendant Rushford restarted plaintiff's ibuprofen, providing him 400 mgs twice daily. Later that same day, defendant Silberschmidt examined plaintiff's no. 17 wisdom tooth. (The parties dispute what Silberschmidt said during the examination. Plaintiff alleges that Silberschmidt said, "'it's that tooth again, huh; theirs [sic] nothing I can do about it, but I'll take a look at it anyways.'" Plt.'s PFOF, dkt. #69, at 5 ¶21. Defendants allege that Silberschmidt offered to extract plaintiff's tooth but plaintiff refused.) Plaintiff asked Silberschmidt to refer him to an oral surgeon to have the tooth pulled, but Silberschmidt refused, explaining that "they" would not permit him to make such a referral. Plaintiff asked him to at least ask, but Silberschmidt refused. Plaintiff also told Silberschmidt that he continued to suffer extreme pain and that the ibuprofen was not alleviating the pain. Plaintiff requested stronger pain medication, a higher dosage or an antibiotic. Silberschmidt denied his request.

For the next three to four weeks, plaintiff complained daily to defendants Cavey, Rushford and Burkeheimer about the extreme pain he was suffering as a result of his no. 17 wisdom tooth. Plaintiff explained that his current doses of ibuprofen were not effective and

that he needed different medication or higher doses or an antibiotic.  He further informed them that he was having difficulty eating and chewing foods and that on some days he could barely open his mouth, eat or sleep because of the extreme pain.  Cavey, Rushford and Burkeheimer refused to change or increase his medication.  They also refused to consult with the jail dentist or schedule plaintiff to see the jail dentist regarding his extreme tooth pain.

On February 10, 2007, plaintiff asked to have his ibuprofen at noon because that is when he suffered headaches.  Defendant Rushford adjusted his medication schedule accordingly.  On February 15, plaintiff asked to see a dentist because his no. 17 wisdom tooth continued to cause him pain despite taking ibuprofen.  (The parties dispute whether defendant Cavey provided plaintiff an additional 400 mgs of ibuprofen twice  a day for five days after this request.)  Cavey referred plaintiff to the dentist on an urgent basis.  On February 21, Cavey placed plaintiff on "nurse call" because he requested a weight and blood pressure check.

On February 28, 2007, defendant Cavey examined plaintiff in response to his continued complaints about pain from his wisdom tooth.  Plaintiff asked her to increase his ibuprofen to three times a day and to provide a higher dosage.  As a nurse, Cavey was not authorized to exceed the nursing protocol guidelines.  Plaintiff believed that his tooth was infected again.  Upon examining plaintiff's tooth, Cavey did not note any swelling or discoloration, which would indicate an infection.  She referred plaintiff to the jail dentist for

9

additional treatment.

On March 4, 2007, plaintiff filed a medical slip, noting that he wanted a weight check because his tooth pain was preventing him from eating very much.  Defendant Rushford scheduled plaintiff to have his weight and blood pressure checked.  On March 6, Rushford dispensed plaintiff's morning ibuprofen and told him that his medication was about to run out, but she would continue it until he was seen by the jail dentist.  Nonetheless, from March 8 through March 10 defendants Cavey and Burkeheimer would not provide plaintiff any pain medication despite his repeated requests and his complaints about extreme tooth pain.  Plaintiff filed several grievances during this time requesting assistance for the extreme tooth pain he was suffering.  On March 11, plaintiff called his mother from the jail to notify her about his circumstances.  Later that same day, plaintiff's aunt came to the jail to express her concern.

On March 12, 2007, defendant Cavey told plaintiff that he would be placed on the "nurse call" list under "to see the jail dentist," but that he would not be seen until March 14.  On March 12, plaintiff also complained of weight loss.  On March 13, Cavey reviewed plaintiff's medical records to check his weight.  Plaintiff had gone from 156 pounds to 145 pounds.  Cavey informed plaintiff that his weight was within normal limits.

On March 14, 2007, defendant Wommack examined plaintiff's teeth and noted that his impacted wisdom tooth, the tooth next to it and a third tooth, that is, his nos. 17, 18

10

and 32 teeth, needed to be removed by an oral surgeon.  He prescribed plaintiff 800 mgs of ibuprofen for ten days.  He also noted exudate around the teeth and placed plaintiff on antibiotics.  Wommack scheduled plaintiff to return on March 23 so that Wommack could monitor plaintiff's condition.  After this examination, Wommack believed that plaintiff needed to see an oral surgeon promptly.  He requested that plaintiff be referred to an outside oral surgeon for treatment.  Wommack attempted to refer plaintiff to Affordable Dentistry, but it did not believe it had the capabilities to extract the wisdom tooth.  That same day, plaintiff met with defendant Rushford to discuss how to arrange oral surgery to be done outside the jail.  Rushford told plaintiff that he needed to pay $425 up front to schedule an appointment with an outside oral surgeon.  Plaintiff explained that he could not afford the surgery.

On March 22, 2007, plaintiff submitted a medical request to have his prescription for ibuprofen extended.  Defendant Rushford noted that plaintiff's prescription for ibuprofen was extended until he could be seen by an oral surgeon.  On March 23, plaintiff was seen by defendant Wommack for followup from the March 14 appointment.  Wommack continued plaintiff's prescription for 800 mgs of ibuprofen for another 20 days.  On March 26, plaintiff met again with Wommack, who advised him that Lieutenant Richelle Anhalt was working on referring plaintiff to an oral surgeon at the county's expense.  Plaintiff had no further complaints and his infection was resolved.  Wommack scheduled another followup visit with

11

plaintiff in a week.  Anhalt contacted several oral surgeons and determined that none would perform the surgery unless the county agreed to cover the cost.  After reviewing plaintiff's situation and consulting with the jail dentists, Anhalt authorized payment for plaintiff's surgery.  The Madison Oral and Maxillofacial Surgery was contacted and agreed to perform the surgery once the county guaranteed payment.

On April 13, 2007, plaintiff was transferred to the custody of the Wisconsin Department of Corrections before the surgery could be performed.  Plaintiff's wisdom tooth was extracted on September 17, 2007.  Although he experienced mild to extreme pain between April 13 and September 17, he was able to handle the pain because he was given unlimited amounts of ibuprofen while incarcerated at the Dodge Correction Institution and Fond Du Lac County jail.

OPINION

A.  Summary Judgment Standard

Under Fed. R. Civ. P. 56, summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  In deciding a motion for summary judgment, the court must view all facts and draw all inferences from those facts in the light most favorable to the non-moving party.  Schuster v. Lucent Technologies, Inc., 327 F.3d 569, 573 (7th Cir. 2003).  Nonetheless, the party

that bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, through the proposal of specific facts, that there is a genuine issue of material fact that requires a trial.  Hunter v. Amin, 538 F.3d 486, 489 (7th Cir. 2009) (internal quotation omitted); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

The applicable substantive law will dictate which facts are material.  Darst v. Interstate Brands Corp., 512 F.3d 903, 907 (7th Cir. 2008).  Further, a factual dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson, 477 U.S. at 248; Roger Whitmore's Automobile Services, Inc. v. Lake County, Ill., 424 F.3d 659, 667 (7th Cir. 2005).  The court's function in deciding a summary judgment motion is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.  Anderson, 477 U.S. at 249; Hemsworth v. Quotesmith.Com, Inc., 476 F.3d 487, 490 (7th Cir. 2007).

## B.  Deliberate Indifference to a Serious Dental Need

The Eighth Amendment prohibits prison employees from showing deliberate indifference to prisoners' serious medical needs.  Estelle v. Gamble, 429 U.S. 97, 103 (1976).  Although the Fourteenth Amendment, not the Eighth Amendment, applies to pretrial detainees, such as plaintiff, the same deliberate indifference standard applies under either amendment; they are interchangeable in this context.  Board v. Farnham, 394 F.3d

13

469, 477-78 (7th Cir. 2005). To defeat defendants' motion for summary judgment on plaintiff's deliberate indifference claim, plaintiff must present facts from which a reasonable jury could infer that he had a serious medical need and that prison officials were deliberately indifferent to that need. Gutierrez v. Peters, 111 F.3d 1364, 1369 (7th Cir. 1997). He has satisfied that burden.

1. Plaintiff's serious dental need

According to the Court of Appeals for the Seventh Circuit, "dental care is one of the most important medical needs of inmates." Wynn v. Southward, 251 F.3d 588, 593 (7th Cir. 2001) (citation omitted). Nonetheless, the importance of dental care does not eliminate the requirement that the dental need at issue must be "objectively serious." Board, 394 F.3d at 479-80. A condition meets this standard if it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005).

Defendants do not dispute that plaintiff's impacted wisdom tooth was an objectively serious dental need. Defendants Wommack and Silberschmidt, both dentists, diagnosed plaintiff's impacted wisdom tooth as mandating treatment. At one time or another, both prescribed plaintiff medication to cope with pain caused by the impacted tooth. Further,

14

plaintiff proposed facts that he suffered extreme pain and was unable to eat properly because of the impacted tooth. Suffering such dental problems have been found to present objectively serious dental needs. Wynn, 251 F.3d 593 (citing cases of objectively serious dental needs). Therefore, a reasonable jury could find that plaintiff suffered from an objectively serious dental need.

2. Dentists' deliberate indifference

The deliberate indifference component of plaintiff's claim requires him to establish that defendants acted with a sufficiently culpable state of mind. Gutierrez, 111 F.3d at 1369. To show deliberate indifference, a plaintiff must establish that the defendant was "subjectively aware of the prisoner's serious medical needs and disregarded an excessive risk that a lack of treatment posed" to his health. Wynn v. Southward, 251 F.3d 588, 593 (7th Cir. 2001). In other words, the official "must 'both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists' and 'must also draw the inference.'" Greeno, 414 F.3d at 653 (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)).

A plaintiff alleging deliberate indifference who has received medical care addressing his health care needs, must show that the treatment he received was "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate" plaintiff's

15

serious medical condition. Snipes v. DeTella, 95 F.3d 586, 592 (7th Cir. 1996) (internal quotation omitted). Mere disagreement with a doctor's medical judgment, Edwards v. Snyder, 478 F.3d 827, 831 (7th Cir. 2007), inadvertent error, negligence, malpractice or even gross negligence in providing treatment is insufficient to establish deliberate indifference. Washington v. LaPorte County Sheriff's Dept., 306 F.3d 515 (7th Cir. 2002).

Defendants Wommack and Silberschmidt contend that the facts establish that plaintiff merely disagreed with their medical judgment about the proper treatment of his impacted wisdom tooth. Defendants argue that plaintiff's tooth did not present an emergency condition requiring surgery until March 2007 and that once it did, plaintiff was scheduled to have the tooth extracted by an oral surgeon. They characterize plaintiff's desire to have the tooth pulled sooner as a disagreement with medical judgment or at most negligence, neither of which is sufficient to prove deliberate indifference. However, viewing the facts in a light most favorable to plaintiff, a reasonable jury could find otherwise.

Although Wommack and Silberschmidt have stated that they complied with the standard of care offered by dentists facing similar circumstances and that the impacted wisdom tooth was not an emergency requiring prompt extraction until March 2007, a reasonable jury could disregard their conclusory opinions and instead look to other evidence in the record to conclude that they were deliberately indifferent to plaintiff's serious dental needs. E.g., Gil v. Reed, 535 F.3d 551, 557 (7th Cir. 2008) (plaintiff's evidence was

16

sufficient to create genuine issue of material fact regarding doctor's state of mind despite two doctor's standard-of-care opinions).  According to defendants, an impacted wisdom tooth becomes an emergency condition requiring a prompt extraction when the tooth causes damage to surrounding tissues or when the tooth pain becomes significant.  In January 2007, plaintiff complained that his impacted wisdom tooth was causing him severe pain.  Wommack noted pus and swelling around the wisdom tooth and saw that it was starting to push into the next tooth.  Nonetheless, neither Wommack nor Silberschmidt even attempted to have plaintiff referred to an oral surgeon to have the tooth extracted until more than two months later.  E.g., Boyd v. Knox, 47 F.3d 966, 969 (8th Cir. 1995) (dentist's three-week delay in referring inmate to oral surgeon for extraction of impacted and infected wisdom tooth can support an Eighth Amendment violation where dentist was aware of inmate's pain and suffering).

Further, plaintiff has proposed facts that Wommack told him in January 2007 that the tooth needed to be extracted "immediately" and that in early February 2007, Silberschmidt refused to attempt to refer plaintiff to an oral surgeon or to provide anything other than 400 mgs of ibuprofen despite plaintiff's complaint that the ibuprofen was not helping alleviate his extreme pain.  Although defendants have proposed facts that dispute plaintiff's facts, at summary judgment I must look at the facts in a light most favorable to plaintiff.  Determining which party's version is correct is a job left for the jury.

17

Additionally, plaintiff has provided facts that both Wommack and Silberschmidt refused to refer him to an outside oral surgeon because they were not permitted to make such referrals.  From these facts one could draw the reasonable inference that in their professional medical judgment, Wommack and Silberschmidt would have scheduled plaintiff for the extraction but that they decided not to do so based on what they perceived to be administrative constraints.  Such a decision could be viewed as "a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that [defendants] did not base [their] decision on such a judgment."  Estate of Cole by Pardue v. Fromm, 94 F.3d 254, 261-262 (7th Cir. 1996).  Therefore, considering the above facts along with plaintiff's repeated complaints of extreme pain and the evidence that his impacted wisdom tooth damaged an adjacent tooth, requiring the eventual extraction of that tooth, plaintiff has raised a genuine issue of material fact about whether Wommack and Silberschmidt were deliberately indifferent to his serious dental needs.

3.  Nurses' deliberate indifference

Just as with the defendant dentists, plaintiff has provided sufficient facts to establish a genuine issue of material fact regarding whether defendants Cavey, Burkeheimer and Rushford were deliberately indifferent to his serious dental needs.  Although defendant nurses responded to many of plaintiff's medical requests and provided plaintiff ibuprofen on

18

many occasions, plaintiff's proposed facts establish several shortcomings that could be viewed as deliberate indifference. For example, according to plaintiff, from February 7, 2007 through March 12, 2007, he complained to defendant nurses every day about the extreme pain his impacted wisdom tooth was causing him, his difficulty eating and chewing foods and his trouble sleeping. However, they refused to increase or change plaintiff's pain medication and they did not consult with the jail dentists or schedule plaintiff to see the jail dentists during that time. Defendant nurses focus on the fact that they did not have the authority to increase or change plaintiff's pain medication. Even assuming this to be true, their lack of authority does not explain why they did not schedule plaintiff to see the dentists or consult with the dentists during this time. One reasonable inference is that they engaged in intentional mistreatment likely to seriously aggravate plaintiff's serious dental condition.

In addition to those facts, plaintiff has proposed that defendant Cavey refused to sign him up to see the jail dentist despite his extreme tooth pain and the dentist's orders to allow him to be seen; defendant Rushford ignored some of plaintiff's medical request slips in which plaintiff complained of extreme tooth pain; and defendants Cavey and Burkeheimer refused to provide plaintiff any ibuprofen for three days despite being aware of plaintiff's impacted wisdom tooth. Such actions committed with the knowledge of plaintiff's impacted wisdom tooth and the extreme pain accompanying the impacted tooth, would be sufficient for a reasonable jury to find in favor of plaintiff on his deliberate indifference claim against

19

defendants Cavey, Bureheimer and Rushford.  Therefore, defendants' motion for summary judgment will be denied.

ORDER

IT IS ORDERED that:

1. The motion for summary judgment, dkt. #42, filed by defendants Julie Cavey, Susanna Rushford, Susan Burkeheimer, Curt Silberschmidt and James Wommack is DENIED and

2.  The motion to stay pretrial proceedings, dkt. #80, is DENIED.

Entered this 5th day of February, 2010.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge